IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE COCA-COLA ENTERPRISES, INC. DERIVATIVE LITIGATION | Master Docket No. 06-CV-467-TWT (Consolidated Action) |

ORDER

This is a shareholder derivative action alleging breach of fiduciary duty on the part of certain officers and directors of Coca-Cola Enterprises. It is before the Court on the Defendants' Motion to Dismiss [Doc. 34]. For the reasons set forth below, the Defendants' motion is GRANTED.

I. BACKGROUND

Plaintiff Doris Staehr is an owner of common stock in Coca-Cola Enterprises ("CCE"). She filed this derivative lawsuit on behalf of CCE against some of its officers and directors, alleging violations of Delaware state law including breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment. The nominal Defendant in this action is CCE, a Delaware corporation. It is the world's largest bottler of product produced by the Coca-Cola Company ("Coca-Cola"). The Plaintiff claims that between October 2003 and the present, CCE engaged in "channel stuffing" to manage its reported revenue and

earnings.  According to the Amended Complaint, "[c]hannel [s]tuffing is a deceptive business practice used by a company to inflate its sales and earnings figures by deliberately sending retailers along its distribution channel more products than they are able to sell to the public."  (Am. Compl., ¶ 9.)  Here, the Plaintiff alleges that Coca-Cola employed CCE to target their customer base with these sales tactics, causing CCE to sell product at lower prices than it would have otherwise charged in order to increase its own total sales volume for the benefit of Coca-Cola.  Throughout the relevant period, the individual Defendants allegedly "caused CCE to disseminate false and misleading public statements, including earnings conference calls, earnings press releases and filings with the Securities and Exchange Commission."  (Am. Compl., ¶ 19.)  Furthermore, the Plaintiff claims that certain of these Defendants traded shares of CCE stock with insider knowledge of these misstatements, thus selling their shares at artificially inflated prices.

Based on these channel stuffing allegations, a securities fraud class action was also filed against CCE and some of its officers.  That case was recently dismissed by this Court.  See In re Coca-Cola Enterprises Inc. Sec. Lit., Civil Action No. 1:06-CV-00275-TWT.  This lawsuit, originally filed February 28, 2006, comes on the heels of that related shareholder class action.  Included among the Defendants are the following individuals: (1) John R. Alm, CEO of CCE from January 2004 until January

2006, President and a director of CCE until January 2006, and Chief Operating Officer of CCE until January 2004; (2) Lowry F. Kline, Chairman of CCE's Board, as well as CEO until January 2004 and from January 2006 until April 2006; (3) Patrick J. Mannelly, Chief Financial Officer of CCE until August 2004; (4) Rick L. Engum, Vice President, Controller, and Principal Accounting Officer of CCE until July 2004; (5) E. Liston Bishop, III, Vice President, Secretary and Deputy General Counsel of CCE; (6) G. David Van Houten, Jr., Executive Vice President, Chief Operating Officer and President of CCE's North American Business Unit until December 2005; (7) Summerfield Johnston, III, Executive Vice President and Chief Strategy and Business Development Officer of CCE until February 2004 and a director of CCE since 2004; (8) J. Trevor Eyton, a director of CCE at all times relevant to this litigation; (9) Gary P. Fayard, a director of CCE at all times relevant to this litigation; (10) L. Phillip Humann, a director of CCE at all times relevant to this litigation; (11) Paula G. Rosput Reynolds, a director of CCE at all times relevant to this litigation; (12) Marvin J. Herb, a director of CCE at all times relevant to this litigation; (13) James E. Copeland, Jr., a director of CCE since 2003; (14) Calvin Darden, a director of CCE since January 2004; (15) J. Alexander M. Douglas, Jr., a director of CCE since October 2004;

(16) Irial Finan, a director of CCE since October 2004; (16) Howard G. Buffett, a director of CCE until April 2004; (17) Steven J. Heyer, a director of CCE until September 2004; (18) Deval L. Patrick, a director of CCE until July 2004; (19) John L. Clendenin, a director of CCE until April 2005; (20) John E. Jacob, director of CCE until April 2005; and (21) Summerfield K. Johnston, Jr., a director of CCE until April 2004.

## II.  MOTION TO DISMISS STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief.  Fed. R. Civ. P. 12(b)(6); see Conley v. Gibson, 355 U.S. 41, 47 (1957); Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992).  In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally, notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id. However, in a shareholder derivative case, "[t]he complaint shall also allege with

particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1.

## III. DISCUSSION

This action is governed by the substantive law of Delaware.  "A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." Stepak v. Addison, 20 F.3d 398, 402 (11th Cir. 1994) (quoting Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984)).  Shareholder derivative suits restrict this managerial authority. Therefore, as a prerequisite to a shareholder derivative suit, Delaware law requires an aggrieved shareholder to demand that the board take the desired action.  Id.  This demand requirement "insure[s] that a stockholder exhausts his intracorporate remedies, and ... provide[s] a safeguard against strike suits." Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

It is undisputed that no demand was made in this instance.  The Plaintiff shareholder thus has the burden of demonstrating that demand is excused because it would have been futile.  A finding of demand futility is authorized only where

"particularized factual allegations of [the] derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993) (emphasis added); accord In re Friedman's, Inc. Derivative Lit., 386 F. Supp. 2d 1355, 1361 (N.D. Ga. 2005). Interest is demonstrated where a director "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders," or "where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." Rales, 634 A.2d at 936.

At first blush, this would seem to be a question easily answered. A majority of the CCE Board at the time the lawsuit was filed are named as Defendants. They could not be expected to make a disinterested decision about whether to sue themselves. However, the Delaware courts have clearly held that derivative action plaintiffs do not ring the futility bell merely by including a majority of the directors as defendants.

> The conundrum for the law in this area is well understood. If the legal rule was that demand was excused whenever, by mere notice pleading, the plaintiffs could state a breach of fiduciary duty claim against a majority of the board, the demand requirement of the law would be weakened and the settlement value of so-called "strike suits" would greatly increase, to the perceived detriment of the best interests of stockholders as investors. But, if the demand excusal test is too stringent,

then stockholders may suffer as a class because the deterrence effects of meritorious derivative suits on faithless conduct may be too weak.

Guttman v. Huang, 823 A.2d 492, 500 (Del. Ch. 2003). When the board itself is alleged to have engaged in wrongdoing, Delaware law requires the Plaintiff to show a "substantial likelihood" of personal liability on the part of the individual directors in order to excuse failure to make a pre-lawsuit demand. Id. at 501. The threat of liability that directors face can be influenced in a substantial way if the corporate charter contains an exculpatory charter provision authorized by 8 Del. C. § 102(b)(7). In the event that the charter insulates the directors from liability for breaches of the duty of care, then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts. Id. The Defendants assert without contradiction that CCE's charter contains such an exculpatory clause. This is a very high hurdle for the Plaintiff to overcome.

CCE's Board of Directors consists of thirteen members. In the Amended Complaint, the Plaintiff identifies as Defendants eighteen different directors who were members of CCE's Board at some point during the relevant period. However, the proper time to measure demand futility is at the filing of the suit. See Aronson, 473 A.2d at 810. At the time of filing, CCE's Board was comprised of the following individuals: Defendants Kline, Eyton, Fayard, Humann, Reynolds, Darden, Herb, Copeland, Douglas, Johnston, III, Finan, and Directors Aguirre and James. In order

to survive a motion to dismiss, the Plaintiff must demonstrate that a majority of these directors were either interested or lacked independence.  Because Aguirre and James were not included as Defendants in this lawsuit, the Plaintiff cannot provide any evidence on them.  See, e.g., Stepak v. Dean, 434 A.2d 388, 390 (Del. Ch. 1981) ("[N]ot only does the complaint fail to allege that Rawlins and Stanley were implicated in any way in the matters complained of but fails to mention them at all.").  The Plaintiff must thus demonstrate that seven of the remaining eleven Defendants either lacked independence or were interested in the alleged transactions.  The Plaintiff makes arguments directed both at CCE's Board of Directors generally and at certain, specific members.  The Court will separately address these claims.

A. Allegations Against All Board Members

1. Coca-Cola's Domination and Control

The Plaintiff's main contention is that Coca-Cola exercises domination and control over CCE and its Board of Directors.   Her pleadings allege that this domination is demonstrated by Coca-Cola's: (1) ownership of 37 percent of CCE's stock (Am. Compl., ¶ 118(a)(i)); (2) exclusive beverage concentrate agreements with CCE, which allow it "to manipulate its own financial condition from sales to CCE through, among other things, price changes, sales volume changes, financing terms and other terms of payment and conditions" (Am. Compl., ¶ 118(a)(ii)); and (3)

financing of CCE's beverage concentrate purchases by "allocating working capital to CCE on a spend-it or lose it basis, and making 'marketing payments' to CCE" that allegedly amounted to over a billion dollars in 2003 alone and but for which CCE would not have been profitable.  (Am. Compl., ¶ 118(a)(iii).)

The Court finds these generalized allegations fail to offer any particularized facts describing how Coca-Cola exerted its allegedly improper domination over CCE directors.  As stated by the Delaware Supreme Court:

> [I]n the demand-futile context a plaintiff charging domination and control of one or more directors must allege particularized facts manifesting "a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling".  The shorthand shibboleth of 'dominated and controlled directors' is insufficient.

Aronson, 473 A.2d at 816; accord Ash v. McCall, 2000 WL 1370341, at *7 (Del. Ch. Sept. 15, 2000).  Coca-Cola's ownership of 37 percent of CCE's stock does not, by itself, demonstrate ownership and control of the company.  See Aronson, 473 A.2d at 815 ("Stock ownership alone, at least when it amounts to less than a majority, is not sufficient proof of domination or control.") (citation omitted); see also Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 845 A.2d 1040, 1044 (Del. 2004) (finding that demand was not excused where two of the six board members were interested and/or lacked independence because they did not comprise at least half the board).

The Amended Complaint, moreover, provides only one specific example of Coca-Cola's alleged managerial and monitoring control over CCE's business information–a 2004 business plan from CCE's Rocky Mountain Division. Specifically, the Plaintiff alleges:

> CCE's Rocky Mountain Division projected a 2004 gross profit of $61,607,000 on total sales volume of 21,516,000 units, reflecting a 0.8% decline in unit sales volume over 2003 with a 7.3% increase in gross profits for the division. CCE's corporate management in Atlanta and Coke's management revised the business plan, by reducing the Division's projected 2004 gross profit by 25% in order to add more sales volume to benefit Coke. Indeed, the Rocky Mountain Division's projected gross profit declined by approximately $3 million to $58,681,000, on an increased projected total sales volume of 21,981,000 units, reflecting a projected 1.0% increase in unit sales volume over 2003 sales but only a 5.5% increase in gross profits (compared with the 7.3 % gross profit under the division's original business plan). CCE was thus forced to absorb a lower gross profit to increase unit sales volume, which benefited(sic) Coke to the detriment of CCE.

(Am. Compl., ¶ 118(a)(iv).)  Again, this pleading fails to provide facts demonstrating that any of the individual Defendants were involved or had any knowledge of these actions.  See Rattner v. Bidzos, 2003 WL 22284323, at *13 (Del. Ch. Oct. 7, 2003) ("[C]laimed red flags 'are only useful when they are either waived in one's face or displayed so that they are visible to the careful observer.'  Thus, the Amended Complaint, in the one instance it alleges a reason why the Director Defendants could somehow have been aware of alleged misdoings at the Company, still falls short of pleading with particularity facts that would excuse demand.").  Furthermore, as the

Defendants correctly point out, higher prices and short-term profit are not the sole route to success or growth.  (Defs.' Reply to Response to Mot. to Dis., at 11.) Ultimately, in order to meet the particularized requirements for demand futility, the Plaintiff must do more than provide a list of generalized statements as to why CCE was controlled by Coca-Cola.  She must explain how each individual director was under Coca-Cola's control such that a majority of the Board was powerless to make a decision free from Coca-Cola's influence.

2. <u>Director Compensation</u>

The Amended Complaint also pleads that all of the Directors except Summerfield Johnston, III, are interested because they received fees for their services. (Am. Compl., ¶ 118 (j).)  The Plaintiff fails to allege, however, that these benefits were more than the ordinary fees paid for service on a board of directors.  It is well established under Delaware law, that "ordinary director compensation alone is not enough to show demand futility."  <u>A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc.</u>, 2002 WL 31820970, at *5 (Del. Ch. Dec. 4, 2002) (<u>citing Grobow v. Perot</u>, 539 A.2d 180, 188 (Del. 1988), <u>overruled on other grounds by Brehm</u>, 746 A.2d at 244); <u>see also McCabe v. Foley</u>, 424 F. Supp. 2d 1315, 1325 (M.D. Fla. 2006) (stating that, under Delaware Law, receipt of customary director compensation does not excuse demand).  Only compensation that is shown to "exceed materially what is

commonly understood and accepted to be a usual and customary director's fee" can demonstrate the interestedness or lack of independence of a director.  A.R. DeMarco Enterprises, Inc., 2002 WL 31820970, at *5 n.13 (quoting Orman v. Cullman, 794 A.2d 5, 29 n.62 (Del. Ch. 2002)).  The Plaintiff alleges nothing in this regard other than to make the conclusory statement that these Defendants were rewarded despite breaching their fiduciary duty to CCE.  This does not show interestedness or lack of independence.

### 3. Failure of Oversight

The Plaintiff contends also that all these Director Defendants are interested because they are exposed to liability as a result of their failure of oversight and would never have sued themselves to recover for the damages suffered by CCE.  As made clear by the Delaware Chancery Court in In re Caremark Intern. Inc. Derivative Lit., 698 A.2d 959 (Del. Ch. 1996), however, this "failure of oversight" theory of recovery is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  Id. at 967.  To prove such a claim, the Plaintiff is required to demonstrate gross negligence, such that "the directors were conscious of the fact that they were not doing their jobs."  Guttman v. Huang, 823 A.2d 492, 505-06 (Del. Ch. 2003).  Here, the Amended Complaint fails to plead any particularized facts demonstrating the Board's involvement in the preparation of CCE's allegedly false

financial statements and press releases.  It also lacks any facts as to what the Board knew or should have known and is void of any degree of particularity on steps the Board could have taken but did not take to prevent these allegedly false statements. See Guttman v. Huang, 823 A.2d 492, 493-494 (Del. Ch.2003) ("When the case most cries out for the pleading of real facts--e.g., about the board's knowledge of the accounting problems at the company or the company's audit committee process--the complaint is at its most cursory, substituting conclusory allegations for concrete assertions of fact.").   The Court thus finds the Amended Complaint has not sufficiently alleged particularized facts showing that the directors face a substantial likelihood of personal liability under this failure of oversight claim.

 4. Insurance Coverage

 The Amended Complaint further alleges that the Board was not independent because its members would lose insurance coverage if they sued themselves or certain officers.  Specifically, CCE's directors' and officers' liability insurance policies includes an "insured versus insured exclusion."  (Am. Compl., ¶ 118(u).)  Courts applying Delaware law have addressed and refuted this argument on several previous occasions.  See Carauna v. Saligman, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) (rejecting this liability insurance exclusion argument as nothing more than a "variation[] on the 'directors suing themselves' and 'participating in the wrongs'

refrain") (quoting Decker v. Clausen, 15 Del. J. Corp. L. 1022, 1028 (Del. Ch. 1989));

see also Egelhof v. Szulik, 2006 WL 663410, at *11 (N.C. Super. Ct. March 13, 2006)

(rejecting the argument that demand would be futile because directors would be

required to sue themselves) (quoting Aronson, 473 A.2d at 818).  The Court similarly

finds this argument to be unpersuasive here.  Identifying an exclusion in their

insurance coverage is insufficient to demonstrate the interestedness of a majority of

the board of directors.

### 5. Totality of Circumstances

The Court must address, finally, the Plaintiff's contention that even if the

Defendants are able effectively to dispute their claims of interestedness or lack of

independence as to each of the directors, she can still demonstrate demand futility

through an "accumulation of all the facts taken together."  McCall v. Scott, 239 F.3d

808, 816-17 (6th Cir. 2001) (citing Harris v. Carter, 582 A.2d 222, 229 (Del. Ch.

1990)); see also In re Cray Inc., 431 F. Supp. 2d 1114, 1121 (W.D. Wash. 2006) ("The

inquiry requires courts to look to the totality of the circumstances in assessing whether

a complaint creates a 'reasonable doubt' concerning the board's independence or

disinterestedness.").  This language does not permit the Plaintiff to rely only on

general allegations and avoid a director-by-director analysis, however.  See In re Cray,

431 F. Supp. 2d at 1121.  The Plaintiff's allegation must plead with particularity facts

sufficient to create a reasonable doubt as to the disinterestedness or independence of each of these Defendants.  The Court will thus now address the Plaintiff's attempts to do so.

B. <u>Allegations Against Specific Defendants</u>

1. <u>Audit Committee Membership</u>

The Amended Complaint alleges that Defendants Copeland, Herb and Reynolds were liable by virtue of their membership on the Board of Directors' Audit Committee.  Specifically, the Plaintiff claims that the Audit Committee was responsible for "overseeing and directly participating in CCE's financial reporting process" and that these Defendants thus violated their duties of due care, loyalty and good faith by participating in the preparation of allegedly false financial statements. (Am. Complaint, ¶ 118(e).)  Courts applying Delaware case law have consistently held, however, that a director is not interested merely by virtue of sitting on an Audit Committee while the corporation faces accounting and audit irregularities.  <u>See, e.g.</u>, <u>In re Cray Inc.</u>, 431 F. Supp. 2d at 1128 ("To demonstrate that the Audit Committee is interested as the result of a possible <u>Caremark</u> claim, Plaintiffs must provide 'particularized factual allegations' that the members face a 'materially detrimental impact' if the claim were to proceed") (applying Delaware law); <u>Irwin ex rel. Omnicare, Inc. v. Gemunder</u>, 2006 WL 3366180, at *5 (E.D. Ky. Nov. 20, 2006)

(same); In re Xcel Energy, Inc., 222 F.R.D. 603, 607 (D. Minn. 2004) (looking to Delaware law for guidance and holding that generalized statements that Audit Committee members "knew or should have known" of false statements did "not constitute facts pleaded with particularity").

Just as in a general failure of oversight claim, the Plaintiff must provide particularized allegations showing the information that the Audit Committee saw and upon which it failed to act.  See Rattner, 2003 WL 22284323, at *13 ("I am unable, from the face of the Amended Complaint, to determine what role, if any, the Board or its members played in the internal processes of collecting and disseminating financial information. The most I can safely admit knowledge of is that [the defendants] were members of the Audit Committee during the Relevant Period...").  For example, in Egelhof, 2006 WL 663410, at *9, the plaintiff alleged that five members of the Board were interested for purposes of demand futility by virtue of their membership on the Audit Committee.  Applying Delaware law, the court found such allegations insufficient to excuse demand, reasoning that the plaintiff had failed to "point to any specific facts indicating the existence of 'red flags' which would have suggested to the members of the committee that there were problems...or of any conscious decision not to take action despite any such red flags." Id.  Similarly here, the Plaintiff has failed to allege the existence of any "red flags" that should have

alerted these committee members to improprieties in CCE's reporting of finances. Indeed, as stated above, "[c]laimed red flags 'are only useful when they are either waived in one's face or displayed so that they are visible to the careful observer.'" Rattner, 2003 WL 22284323, at *13 (citation omitted).  No such allegation exists here.

### 2. Financial Expertise

The Plaintiff also contends that because Defendants Copeland and Fayard possessed financial expertise, they had a heightened duty to oversee the financial statements released by the company and lack disinterestedness because of this specialized knowledge. (Am. Compl., ¶ 118(f), (g).) Specifically, Fayard has held the positions of Executive Vice President of Coca-Cola since February 2003 and Chief Financial Officer of Coca-Cola since December 1999.  Prior to his recent retirement in 2003, Copeland had been the CEO of Deloitte & Touche USA, LLP and Deloitte Touche Tohmatsu.  The Plaintiff asserts that this extensive financial acumen provided these Defendants with a superior ability to evaluate insider information available to them and, accordingly, exposes them to greater liability for their misfeasance. However, "no Delaware case has held that directors with professional qualifications are held to a higher standard of care in the duty of oversight context."  Canadian Commercial Workers Indus. Pension Plan v. Alden, 2006 WL 456786, at *7 n.54 (Del. Ch. Feb. 22, 2006); see also Egelhof, 2006 WL 663410, at *9 (finding

conclusory allegations of board members' financial expertise insufficient to excuse demand).  Indeed, the Plaintiff's allegations in this instance fail to do anything more than lay out these Defendants' credentials.[1]  The Court thus finds that the Plaintiff has failed to plead facts sufficient to show these Defendants were interestedness or lacked independence.

### 3. Insider Trading

According to the Amended Complaint, Defendants Herb, Johnston, III, and Kline were interested because they engaged in allegedly illegal insider trading using knowledge they attained regarding CCE's improper sales practices.  As stated by the Delaware Chancery Court, "it is unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information."  Guttman, 823 A.2d at 502.  The Court must thus inquire as to:

> [W]hether the plaintiffs have pled particularized facts regarding the directors that create a sufficient likelihood of personal liability because they have engaged in material trading activity at a time when (one can

_____

[1]The Court further finds that the Plaintiff's general citation to In re Emerging Commc'ns, Inc. S'holders Lit., 2004 WL 1305745 (Del. Ch. June 4, 2004), does not change this analysis.  The plaintiffs in that case filed a fiduciary duty class action, not a derivative lawsuit, and the court thus made no determination as to whether any of the directors' financial expertise made them interested in the transaction.  The case is therefore inapposite.

infer from particularized pled facts that) they knew material, non-public information about the company's financial condition.

Id.; see also Rattner, 2003 WL 22284323, at *11 (concluding that demand futility was not demonstrated by allegations of insider trading because the complaint failed to provide any particularized allegations "explain[ing] what inside knowledge [the defendant] traded upon or how he gleaned such information").  A plaintiff attempting to make an insider trading claim must allege with detail that "each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information."  Stepak v. Ross, 1985 WL 21137, at *5 (Del. Ch. Sept. 5, 1985).

Rattner, 2003 WL 22284323, provides relevant guidance on this issue.  There, the plaintiff attempted to demonstrate that several directors had engaged in insider trading and were thus interested.  His "best effort" at pleading these claims with particularity, however, provided only that:

> [B]ecause of the individual defendants' positions at the company, they had access to the adverse undisclosed information about its business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors['] meetings and committees thereof and via reports and other information provided to them in connection therewith.

Id. at *10 n.53.  The Delaware Chancery Court noted several key omissions from these pleadings.  Specifically, the plaintiff had failed to provide any facts regarding: (1) the roles these defendants played at the company and the information that would have come to them; (2) the timing of their trades and those trades' temporal proximity to the receipt of alleged insider information; and (3) whether these trades differed substantially from the defendants' prior trading practices.  Id. at 10.

The Amended Complaint similarly fails to provide particularized facts as to what each of these Defendants knew and when they knew it.  Indeed, the Plaintiff alleges only:

> As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse, non-public information regarding the improper accounting.

(Am. Compl., ¶ 118(d).)  These conclusory allegations are strikingly similar to those found insufficient in Rattner.  They fail to identify any dates upon which Kline, Herb, or Johnston, III gained material, non-public information or how their receipt of that information corresponded with this alleged insider trading.  The pleadings further fail to explain how this trading was inconsistent with prior trading periods or provide any information as to what percentage of their holdings these Defendants traded.  See Guttman, 823 A.2d at 504 (holding that, where a complaint fails to provide any facts

indicating that the directors had a basis to believe the company's financial statements were misleading, evidence that two of them sold a large portion of their stock does not support a conclusion that they are liable). The Plaintiff has failed to create any inference that the Defendants traded on material, nonpublic information and are thus interested directors.

### 4. Employment With CCE

The Amended Complaint alleges that Defendant Kline's employment with CCE prevented him from being able to consider independently a demand on CCE's Board. Specifically, the Plaintiff contends that because Kline, as the company's CEO, was paid millions of dollars in salary and bonuses in 2002 and 2003, he lacked independence from those Defendants–Copeland and Reynolds–who were on the Compensation Committee and thus exerted influence over his salary and benefits. (Am. Compl., ¶ 118(h).) After assessing all the Plaintiff's allegations, however, the Court has not found particularized facts demonstrating Copeland and Reynolds's interestedness. In order to demonstrate that a director is controlled, "[t]here must be some alleged nexus between the domination and the resulting personal benefit to the controlling party." Highland Legacy Ltd. v. Singer, 2006 WL 741939, at *5 (Del. Ch. March 17, 2006) (citing Aronson, 473 A.2d at 816). Accordingly, where a complaint fails to plead facts sufficient to demonstrate that the "controlling" directors benefitted

from the transaction, demonstrating the "beholden" director's lack of independence is a non-starter.  Indeed, in each of the cases cited by the Plaintiff, the benefit to the controlling director or shareholder had been established through the pleadings.  See Rales, 634 A.2d at 937; In re The Student Loan Corp. Derivative Lit., 2002 WL 75479, at *3 (Del. Ch. Jan. 8, 2002); Mizel v. Connelly, 1999 WL 550369, at *4 (Del. Ch. Aug. 2, 1999); In re Veeco Instruments, Inc. Sec. Lit., 434 F. Supp. 2d 267, 275 (S.D.N.Y. 2006).  The Court thus finds that the Plaintiff's allegations fail to demonstrate Kline's lack of independence.[2]

---

[2]The Plaintiff made two additional arguments addressed by the Defendants in their motion to dismiss.  In the Amended Complaint, the Plaintiff argued that: (1) Finan, Douglas, and Fayard's ownership of Coca-Cola stock demonstrates their interestedness (Am. Compl., ¶ 118(b)); and (2) Copeland, Humann, and Johnston, III have prejudicial entanglements preventing their disinterested consideration of this demand.  (Am. Compl., ¶ 118(l).) The Plaintiff did not respond to the Defendants' motion on these claims, however, indicating that she does not oppose dismissal.  See Welch v. Delta Airlines, Inc., 978 F. Supp. 1133, 1148 (N.D. Ga. 1997) ("Under Local Court Rule 7.1 of the United States District Court for the Northern District of Georgia, factual and legal claims to which there is no response should be treated as unopposed."); see also In re Cray Inc., 431 F. Supp. 2d 1114, 1121 (W.D. Wash. 2006) (limiting its analysis of the "Plaintiffs' futility allegations to only those that Plaintiffs support with argument") (applying Delaware law).  The Court deems this failure to be an abandonment of the claim.  See City of Lawrenceville v. Ricoh Electronics, Inc., 370 F. Supp. 2d 1328, 1333 (N.D. Ga. 2005).  Even if the Court considered these arguments and found that they were sufficiently plead, moreover, demonstration of the interestedness of these six directors would still not show demand futility for the majority of the Board.

IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that the Plaintiff has not pleaded particularized facts creating a reasonable doubt as to any member of CCE's Board of Directors.  Accordingly, the Defendants' Motion to Dismiss [Doc. 34] is GRANTED.

SO ORDERED, this 12 day of March, 2007.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge